2010 Ark. 435

Gene LUDWIG, Appellant,

v.

BELLA CASA, LLC; Beau Vue Estates Property Owners' Ass'n; Terry Fleming; Ken Shollmier; Jim Butenschoen; George Ivory; Jon Jacoby; Oscar Dyer, Jr.; Shelia McHaffy; Richard Evans; Bryan Dietz; Louis Bianco; Ruby Nelson; Tommy Ready; Reginald & Latina Martin; Freddie N. Smith; Dr. Tommy & Gloria Love; and Brenda Norwood, Appellees.

No. 09–1278.

Supreme Court of Arkansas.

Nov. 11, 2010.

Gene Ludwig, Little Rock, pro se.

Davidson Law Firm, Ltd., by: Matthew D. Wells and Charles Darwin "Skip" Davidson, Little Rock, for appellees.

JIM GUNTER, Justice.

Appellant Gene Ludwig appeals from the judgment of the Pulaski County Circuit Court permanently enjoining him from creating a private airstrip on his residential property in a rural area of Pulaski County. We granted certification of this case from the court of appeals because it involves an issue of first impression and an issue of law needing clarification or development. Therefore, our jurisdiction is pursuant to Arkansas Supreme Court Rule 1–2(b)(1), (5).

On appeal, Ludwig asserts two points of error: (1) that the circuit court erred in granting a jury trial at the request of appellees,[1] and (2) that the circuit court erred in denying certain jury instructions proffered by appellant. We reverse and remand on the first point and affirm on the second.

Appellant, who owns land in Western Pulaski County near Pinnacle Mountain, built a private airstrip on his property for the purpose of flying his personal airplane. After the Little Rock Planning and Development Department ("the Department") received notice of construction activity on appellant's property, it sent a compliance officer to investigate. After discovering that appellant was constructing a private airstrip, the Department issued a notice to appellant that he was not in compliance with zoning ordinances and instructed him to remove the construction within ten days. Appellant appealed that notice to the Little Rock Board of Zoning Adjustment ("the Board"). During a hearing before the Board where appellant was allowed to present his position, the Board determined that appellant's construction was not an "airport or landing field" as defined by zoning ordinances and that his construction was for "private recreational use."

On September 27, 2007, appellees filed a Third Amended Complaint in Pulaski County Circuit Court appealing from the Board's decision in appellant's favor and stating a claim against appellant for private nuisance. Appellees attached the certified minutes of the Board's decision to the complaint. Appellees requested a preliminary and a permanent injunction, declaratory judgment, and an award of costs and reasonable attorney's fees. On February 4, 2008, appellant filed a Motion for Trial to Be Heard by the Trial Judge Sitting as Finder of Fact and Law in which he maintained that appellees were not entitled to a jury trial. In an order filed February 12, 2008, the circuit court declared that appellant's motion was untimely per the scheduling order. However, at a hearing on February 25, 2008, counsel for all parties argued the jury-trial issue. The court took the matter under advisement. The next day, the court again addressed the jury-trial issue at a hearing. Apparently, the circuit court handed down its ruling on the jury issue at this February 26 hearing; however, the court's recording device and backup recording device were not functioning, and there is no record of that bench ruling. However, it is evident from the record that the court went forward with impaneling a jury.

1. Appellees are entities or persons who own property near appellant's proposed airstrip.

The trial was conducted February 26–29, 2008. Along with other standard jury instructions, three special interrogatories were submitted to the jury. Answering those interrogatories, the jury found that appellant's construction of the landing strip did not constitute an "airport or landing field" as defined by the Little Rock Municipal Code; that his proposed use of the landing strip was not for "private recreational use" as defined by the Little Rock Municipal Code; and that a preponderance of the evidence supported that his landing strip was a nuisance. The circuit court entered a judgment on March 6, 2008, stating that the jury "was seated to hear the legal causes of action and issues with the court sitting as the finder of fact concerning the equitable issues and relief." The judgment also noted that over appellant's objection, the court determined that Ark.Code Ann. § 14–56–425 allowed for a jury trial in this instance and that the nuisance cause of action was also triable to a jury even where the only relief requested was injunctive. Citing to the jury's findings on the three interrogatories, the court permanently enjoined appellant from operating or permitting the operation of his landing strip for the purpose of air travel.

For his first point on appeal, appellant asserts that the circuit court erred in submitting all issues to a jury rather than the trial judge sitting as finder of fact and concluder of law. He argues that, because the only remedy sought by appellees on their claims was injunctive relief, they were not entitled to a jury trial. Appellant claims that a "jury cannot hear equitable causes of action." In response, appellees contend that they were entitled to a jury trial on both the de novo appeal from the Board's decision and the nuisance claim. Appellees claim that they had a right to a jury trial on the statutory appeal from the Board's decision under Ark.Code Ann. § 14–56–425. They also maintain that they had a common-law right to a jury trial on the nuisance claim, or in the alternative, this court should adopt a "flexible approach" to determining whether the right to a jury trial exists following the passage of amendment 80 of the Arkansas Constitution.

Entitlement to a jury trial is a legal issue centered on constitutional interpretation and is reviewed de novo on appeal. *See First Nat'l Bank of DeWitt v. Cruthis*, 360 Ark. 528, 203 S.W.3d 88 (2005). The constitutional right to a jury trial is limited to those cases which were so triable at common law. *Baptist Health v. Murphy*, 2010 Ark. 358, 373 S.W.3d 269. This court has clearly stated that article 2, section 7 of the Arkansas Constitution does not assure the right to a jury trial in all possible instances, but rather in those cases where the right to a jury trial existed "when our constitution was framed." *Cruthis*, 360 Ark. at 534, 203 S.W.3d at 92 (quoting *Jones v. Reed*, 267 Ark. 237, 590 S.W.2d 6 (1979)). Furthermore, the right to a jury does not apply to new rights created by the legislature since the adoption of the constitution. *Id.* at 535, 203 S.W.3d at 92. However, where a cause of action did not exist at common law, but is entirely a creature of statute, it exists in the manner and form prescribed by the statute which created it. *St. Paul Mercury Ins. Co. v. Cir. Ct. of Craighead Cnty.*, 348 Ark. 197, 73 S.W.3d 584 (2002).

Appellees claim that they are entitled to a jury trial on the de novo appeal of the Board's decision pursuant to the plain language of Ark.Code Ann. § 14–56–425 (Repl.1998),[2] which provides that,

---

2. We upheld the constitutionality of this stat-

ute's provision allowing de novo appeal to

[i]n addition to any remedy provided by law, appeals from final action taken by the administrative and quasi-judicial agencies concerned in the administration of this subchapter may be taken to the circuit court of the appropriate county where they shall be tried de novo according to the same procedure which applies to appeals in civil actions from decisions of inferior courts, including the right of trial by jury.

When reviewing issues of statutory interpretation, we are mindful that the first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Cave City Nursing Home, Inc. v. Ark. Dep't of Human Servs.*, 351 Ark. 13, 89 S.W.3d 884 (2002). When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. *Id.* A statute is ambiguous only where it is open to two or more constructions, or where it is of such obscure or doubtful meaning that reasonable minds might disagree or be uncertain as to its meaning. *Id.* When a statute is clear, however, it is given its plain meaning, and this court will not search for legislative intent; rather, that intent must be gathered from the plain meaning of the language. *Id.* This court is hesitant to interpret a legislative act in a manner contrary to its express language, unless it is clear that a drafting error or omission has circumvented legislative intent. *Id.*

Here, the plain language of § 14–56–425 says that appeals taken from final actions of administrative agencies are appealed to the circuit court and should be tried de novo pursuant to normal procedures, including the right to a jury trial. The language of the statute is not ambiguous; therefore, it is not necessary for this court to resort to identifying legislative intent. The statute is exclusive to appeals from administrative or quasi-judicial zoning agencies; it involves no other types of actions. There was no right to a jury trial at common law for these types of cases because these agencies did not exist at common law and are creatures of statute. In drafting the statute, the legislature specifically and clearly intended the right to a jury trial to attach to these types of claims. Therefore, because the plain language of the statute confers a jury trial in these types of appeals to circuit court, it was not error for the circuit court to submit the fact issues regarding the statutory appeal to the jury.

Appellant also argues that appellees were not entitled to a jury trial on the nuisance claim because the only relief requested was equitable—an injunction. Appellees, however, maintain that after the adoption of amendment 80 in November 2000, which merged courts of equity and law, this court should take a "flexible approach" to a party's entitlement to a jury trial. The flexible approach considers three factors when determining whether the right to a jury attaches: (1) whether the cause of action was traditionally legal or equitable at common law, (2) whether the remedy sought is legal or equitable, and (3) the practical abilities and limitations of the jury as a fact-finder in complex litigation. *See Ross v. Bernhard*, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). In other words, appellees assert that when a case involves both legal and equitable claims with common questions of fact, the circuit court should try those questions to the jury and reserve the determination of equitable relief to itself. *See* David Newbern & John Watkins, *Arkansas Practice*

circuit court in *City of Fort Smith v. McCutch-* en, 372 Ark. 541, 279 S.W.3d 78 (2008).

*Series: Civil Practice & Procedure* § 29:3 (4th ed.).

A private nuisance is conduct on land which disturbs the quiet use and enjoyment of nearby property, and if injury to nearby property is certain and substantial, an injunction may issue. *Manitowoc Remanufacturing, Inc. v. Vocque,* 307 Ark. 271, 819 S.W.2d 275 (1991). Other states have traditionally viewed the nuisance cause of action as a legal one that permits a trial by jury, even where only injunctive relief is being sought. *See, e.g., Morgan Cnty. Concrete Co. v. Tanner,* 374 So.2d 1344 (Ala.1979); *May v. Brueshaber,* 265 Ga. 889, 466 S.E.2d 196 (1995); *Davis v. J.C. Nichols Co.,* 714 S.W.2d 679 (Mo.Ct. App.1986); *Storey v. Cent. Hide & Rendering Co.,* 148 Tex. 509, 226 S.W.2d 615 (1950). However, Arkansas has routinely treated private nuisance cases where the complaining party requested equitable relief as cases to be tried to a chancellor prior to amendment 80. *See, e.g., Vocque, supra; Milligan v. Gen. Oil Co.,* 293 Ark. 401, 738 S.W.2d 404 (1987); *Green v. Smith,* 231 Ark. 94, 328 S.W.2d 357 (1959); *Gus Blass Dry Goods Co. v. Reinman & Wolfort,* 102 Ark. 287, 143 S.W. 1087 (1912); *Harvey v. De Woody,* 18 Ark. 252 (1856). "Courts of chancery exercise jurisdiction ... as to ... private nuisances, by restraining persons from setting them up, by inhibiting their continuance, or compelling their abatement." *Harvey,* 18 Ark. at 258.

In *Cruthis,* we addressed jurisdictional issues following amendment 80's passage and the merging of courts of equity and courts of law.

As a consequence of Amendment 80, courts that were formerly chancery and circuit courts are now referred to as circuit courts. Because Amendment 80 states that circuit courts assume the jurisdiction of chancery courts, circuit courts simply have added to their already existing jurisdiction as a court of law the equitable jurisdiction which chancery courts held prior to adoption of the Amendment. In other words, no new or expanded jurisdiction beyond that formerly existing in the chancery and circuit courts was created through Amendment 80. Rather, circuit court jurisdiction now includes all matters previously cognizable by circuit, chancery, probate, and juvenile court.

Prior to adoption of Amendment 80, a choice had to be made by a plaintiff of whether it was best to file suit in chancery or circuit court. The clean-up doctrine was used to allow a chancery court to decide law issues because under that longstanding rule, once a chancery court acquired jurisdiction for one purpose, it could decide all other issues. The doctrine reached the point in recent years that unless the chancery court had no tenable nexus to the claim, this court would consider the matter of whether the claim should have been heard in chancery to be one of propriety rather then one of subject-matter jurisdiction. Further, it was possible to sever claims at law to be tried in circuit court.

There is no longer a need to elect in which court to file a lawsuit. However, as already discussed, Amendment 80 did not alter the jurisdiction of law and equity. It only consolidated jurisdiction in the circuit courts. Therefore, matters that could be submitted to a jury for decision and the matters that must be decided by the court remain unaltered.

*Cruthis,* 360 Ark. at 533–34, 203 S.W.3d at 91–92 (citations omitted). In *Cruthis,* we reversed the circuit court's decision to submit an unjust enrichment claim to a jury where the plaintiff sought restitution and an equitable lien, which would have traditionally been handled by chancery court.

Because amendment 80 did not alter the jurisdiction of law and equity, we held that the circuit judge should have ruled on the claim, not the jury.[3]

We have a similar situation in the present case. The circuit judge submitted the issue of whether appellant's airstrip was a nuisance to the jury, but reserved the issue of remedy for the court. Traditionally, the determination of whether something constitutes a private nuisance and whether to grant equitable relief was for a chancellor to decide in a court of equity. Relying on our holding in *Cruthis*, we reverse the circuit court's decision to submit the private nuisance claim to a jury. As a claim that would normally lie in equity, the circuit court erred in submitting the nuisance issue to the jury.

For his final point on appeal, appellant focuses on perceived errors in the instructions to the jury. He argues that the three special interrogatories the appellees submitted to the jury were not clear and complete; that the circuit court erred in declining to submit appellant's proffered instruction regarding strict construction of statutes; and that the circuit court erred in declining to submit appellant's proffered instructions on the definitions of "accessory use" and "recreational."

This court has held that a party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. *Travis Lumber Co. v. Deichman*, 2009 Ark. 299, 319 S.W.3d 239. However, we will not reverse a trial court's refusal to give a proffered instruction unless there was an abuse of discretion. *Id.*

It appears that appellant never attempted to proffer special interrogatories different from the three that were submitted to the jury. Therefore, his argument that the appellees failed to proffer clear, complete interrogatories is waived. Arkansas Rule of Civil Procedure 51 states that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto . . ., and no party may assign as error the failure to instruct on any issue unless such party has submitted a proposed instruction on that issue." *See also Peoples Bank & Trust Co. v. Wallace*, 290 Ark. 589, 721 S.W.2d 659 (1986) (holding that a party must submit a proposed instruction to preserve an objection for appeal).

Appellant did proffer two jury instructions at trial relating to the permitted uses for property zoned agricultural and forestry and the nuisance claim. Appellant's argument on appeal seems to be limited to the instruction he proffered regarding zoning, in which he instructed the jury to determine if the airstrip was a "usual accessory use" to a single-family residence and instructed the jury that zoning ordinances must be strictly construed.

There was no basis in the record to support giving appellant's proffered instruction regarding zoning. Appellees appealed the Board's decision that appellant's airstrip was not an "airport or landing field" and whether it could be considered "private recreational use." Appellant never asked the Board to determine that his airstrip was an "accessory use," and the Board did not make such a determination. That was simply not at issue on appeal from the Board's

---

**3.** We also note that section 19(A)(2) of amendment 80, referring to the duties of circuit and chancery judges, states that "the respective jurisdictional responsibilities for matters legal, equitable or juvenile in nature as presently exercised by such Judges shall continue until changed pursuant to law."

decision, and appeals from the Board to the circuit court are to be tried de novo on the same issue that was pending before the Board. *Ark. Power & Light Co. v. City of Little Rock,* 243 Ark. 290, 420 S.W.2d 85 (1967); *City of Little Rock v. Leawood Prop. Owners' Ass'n,* 242 Ark. 451, 413 S.W.2d 877 (1967). Furthermore, appellant included in that proffered jury instruction the directive that zoning ordinances, in derogation to the common law, must be construed strictly. Appellant is confusing cases involving an appellate court's review and rules of construction with instructions intended for a jury. Moreover, there was no allegation that the ordinances at issue here were ambiguous and in need of construction. We are not convinced that the circuit court abused its discretion in refusing to instruct the jury as to the proffers made by appellant.

Affirmed in part; reversed and remanded in part.

BROWN, J., concurs in part and dissents in part.

ROBERT L. BROWN, Justice, concurring in part, dissenting in part.

I agree with the majority that the circuit court did not abuse its discretion in refusing to instruct the jury on the two jury instructions proffered by Ludwig.

However, I disagree with the majority that the circuit court erred in submitting the nuisance issue to the jury for determination. After the jury's verdict that a nuisance was ongoing, the judge determined that injunctive relief was warranted. This procedure was appropriate in my judgment for several reasons.

First, common law nuisance has traditionally been a cause of action submitted to the jury. *See, e.g., McLean v. City of Fort Smith,* 185 Ark. 582, 48 S.W.2d 228 (1932) (holding that when facts establishing nuisance are in dispute, the court should submit the question to the jury). In the instant case, the court instructed the jury as follows: "A nuisance is conduct by one landowner that unreasonably or unlawfully interferes with the use and enjoyment of the lands of another and includes conduct that disturbs the peaceful, quiet and undisturbed use and enjoyment of nearby property." The jury found that this fact had been established.

Second, the case of *First National Bank of DeWitt v. Cruthis,* 360 Ark. 528, 203 S.W.3d 88 (2005), is not controlling. In *Cruthis,* the error was not the submission of unjust enrichment for a jury decision but rather allowing the jury to decide whether the remedy of an equitable lien should be imposed.

Thus, although unjust enrichment is an equitable cause of action, because it is based on the alleged breach of an implied contract, it may be heard in circuit court and may be heard by a jury. However, we must reverse because restitution was not the only equitable remedy sought in Count 1. FNB also sought an equitable lien on certain property. An equitable lien is a right to have a demand satisfied from a particular fund or specific property. An equitable lien has also been defined as a remedy that awards a nonpossessory interest in property to a party who has been prevented by fraud, accident or mistake from securing that to which he was equitably entitled. An action on an equitable lien was historically heard in chancery court because it is an equitable remedy. Because an equitable lien was sought, the circuit court erred in submitting Count 1 to the jury, and because we reverse on this basis, we need not address the remaining issues.

*Cruthis,* 360 Ark. at 537, 203 S.W.3d at 94 (internal citations omitted). In the instant case, the remedy of the injunction was not sought from the jury but from the judge. The jury merely found a nuisance to exist.

Third, both general law and Arkansas commentators support what the circuit judge did in this case. First, there is *American Jurisprudence:*

> Although a jury trial may not be a matter of right, the chancellor in a case to abate a public nuisance may submit such issues of fact to the jury as he deems appropriate. It is proper to submit the question of the existence of a nuisance to a jury if the evidence is sufficient to raise the issue, and, in such a case, the jury should be properly instructed. However, while in some jurisdictions the existence of a nuisance may be determined by the verdict of a jury, such a verdict is merely advisory and may be accepted or rejected by the court.

58 Am. Jur. 2d Nuisances § 387 (2002).

Next, former Justice David Newbern and Professor John Watkins describe what the circuit judge did in the instant case as the preferable approach: "When a case with legal and equitable claims involves common questions of fact, the preferable approach is to try those questions to a jury, perhaps on written interrogatories as allowed by Ark. R. Civ. P. 49(a), before the court determines whether equitable relief is appropriate." 2 Ark. Civ. Practice & Procedure § 29:3 (5th ed. 2010).

For all of these reasons, I would affirm on the nuisance issue as well.