HOWARD W. BRILL, Chief Justice |, This appeal arises from a dispute between a father and his son over the ownership of Chicot County farmland. The father, appellant George M. Stokes, Sr. (“George”), appeals an order of the Chicot County Circuit Court, denying and dismissing George’s motion to set aside title in the farmland and awarding attorney’s fees to his son, appellee Mason F. Stokes (“Mason”). For reversal, George argues that the circuit court erred (1) by denying his constitutional right to trial by jury, (2) by ruling that a 1999 warranty deed was valid, (3) by ruling that no genuine issue of material fact existed as to a 2009 quitclaim deed, and (4) by awarding attorney’s fees to Mason. Pursuant to Arkansas Supreme Court Rule 1 — 2(d) (2015), this case was transferred from the court of appeals to this court because it involves an issue concerning the interpretation of the Arkansas Constitution. We affirm in part and reverse in part. |2I. Facts In the 1970s, George and his wife, Penelope, acquired farmland in Chicot County. During the 1990s, their son, Mason, requested that some of the farmland be placed in his name. On April 12, 1999, George and his wife transferred ownership of the Chicot County farmland to Mason and George II, Mason’s son, as tenants in common by warranty deed. George recorded the deed on September 27, 1999. After executing the warranty deed, Mason and George II appointed George as their power of attorney to transact business on their behalves. On April 13, 2000, George recorded the power of attorney. In 2007, Mason and George II revoked the power of attorney and recorded their revocations with the Chicot County Circuit Clerk. Subsequently, George became concerned about Mason’s personal life, health, and stability. In October 2009, George executed and recorded a quitclaim deed, transferring the disputed farmland in Chi-cot County back to himself by purporting to act as the power of attorney for Mason and George II. On November 16, 2010, Mason and George II filed a petition to quiet title to the farmland.[1] Specifically, Mason sought to set aside the 2009 quitclaim deed and to recover damages for conversion, fraud, and negligence. His prayer for relief included immediate injunctive relief, the appointment of a receiver to manage the property, and the recovery of rents and government payments on an unjust-enrichment basis. George filed a counterclaim seeking to set aside the 1999 warranty deed. On August 22, 2012, the circuit court entered |san order granting partial summary judgment and found that Mason’s power of attorney had been effectively revoked in July 2007; that the 2009 quitclaim deed was void because George had transferred the land to himself based on an ineffective power of attorney; and that the 1999 warranty deed was unambiguous and not subject to the parol-evidence rule. The circuit court reserved ruling on George’s counterclaim and later denied it. In a letter order, the circuit court wrote, [George] executed a warranty deed to his son and grandson, in what he admitted was an attempt to avoid probate of at least some of his estate and to avoid or evade some possible estate tax. ■When he did not die [from a stroke] as ■he contemplated, he wanted to undo it all[,] ... and at the end of the ten years [after executing his warranty'deed] he wanted to renege on the transaction through a half bogus and half revoked power of attorney.... [He] has failed to prove any grounds for setting it aside. The circuit court entered an order, ruling that the 1999 warranty deed was a valid deed and transferred a one-half interest in the farmland to Mason; that George failed to prove any grounds for setting aside the 1999 warranty deed; that his counterclaim was denied and dismissed. The court found that Mason and George each owned an undivided one-half interest in the farmland as tenants in common. The court authorized distribution of one-half of the crop income to Mason. On January 26, 2015, the circuit court entered a final decree ordering distribution of the crop proceeds. George timely filed a notice of appeal; Mason filed a motion for attorney’s 'fees seeking fees and costs in the amount of $63,021.81 pursuant to Arkansas Code Annotated section 16-22-308 (Repl. 1999). The circuit court found that the fee request was reasonable but that a portion of the fees was caused by Mason’s own actions, and as. a result, the circuit court reduced the fee request by 14one-third and awarded Mason $41,972.52. George filed a timely notice of appeal. II.. Law and Equity For his first point on appeal, George argues that the circuit court impaired his constitutional right to a trial by jury by adjudicating the equitable claims before the legal claims. Specifically, George had filed a demand for jury trial on “all pending legal claims prior to final determination of Plaintiffs’ equitable claims.”[2] The. applicable standard of review is that any claim to a jury trial is reviewed de novo on appeal. First Nat’l Bank of DeWitt v. Cruthis, 360 Ark. 528, 203 S.W.3d 88 (2005). The first Arkansas Constitution of 1836 stated that the right to trial by jury “shall remain inviolate.” The four subsequent constitutions continued that guarantee with the addition of the term, “cases at law.” This court has held that the Arkansas Constitution does not assure the right to a jury trial in all possible instances; rather, it is reserved to those cases where the right to a jury trial existed when the Arkansas Constitution was framed. See Baptist Health v. Murphy, 2010 Ark. 358, 373 S.W.3d 269. The constitutional right to a jury trial does not extend to a case in equity. S. Farm Bur. Cas. Ins. Co. v. Tallant, 362 Ark. 17, 207 S.W.3d 468 (2005). The right to á jury trial extends only to those cases that were subject to trial by jury at the common law. Id.. In Arkansas, this court looks to the historical nature of |sthe claim to determine whether a trial by jury is warranted. Amendment 80 to the Arkansas Constitution merged the chancery and circuit courts. See Cruthis, 360 Ark. 528, 203 S.W.3d 88.[3] We have stated that amendment 80 did not . alter the jurisdiction of law and equity; it only consolidated jurisdiction,in the circuit courts. See id. It did not alter or expand a party’s right to trial by jury. See, e.g., Nat’l Bank of Ark. v. River Crossing Partners, 2011 Ark. 475, 385 S.W.3d 754. Our opinions since 2001 have affirmed the historical, test by looking to the remedies sought in the complaint. See River Crossing Partners, 2011 Ark. 475, 385 S.W.3d 754 (reversing the circuit court and holding that foreclosure, equitable-lien, and fraudulent-transfer claims should have been submitted to the judge); Ludwig v. Bella Casa, LLC, 2010 Ark. 435, 372 S.W.3d 792 (reversing and remanding a portion of the circuit court’s decision to send ah equitable claim of nuisance to the jury and to reserve for itself the question of whether to grant an injunction); Baptist Health, 2010 Ark. 358, 373 S.W.3d 269 (holding that the circuit court properly heard equitable matters of declaratory judgment and injunctive relief); In re Estates of McKnight v. Bank of Am., N.A., 372 Ark. 376, 277 S.W.3d 173 (2008) (holding no right to jury trial in probate proceedings); Tallant, 362 Ark. 17, 207 S.W.3d 468 (holding that the, equitable principle of subrogation was properly decided by the circuit court); Cruthis, 360 Ark. 528, 203 S.W.3d 88 (holding that the circuit court erred in submitting the issue of an equitable lien to the jury).- Traditionally, setting aside a deed has been an equitable remedy in Arkansas. Wood v. Swift, 244 Ark. 929, 428 S.W.2d 77 (1968). Additionally, an accounting is an equitable remedy. In re Estates of McKnight, 372 Ark. 376, 277 S.W.3d 173. Likewise, üyunctive relief and the appointment of a receiver are equitable in nature. In this instance, the circuit court properly disposed of both issues — setting aside the deed and an accounting of the farm expenses — as equitable claims. Therefore,-the right to a jury trial did not attach. Thus, we conclude that the circuit court properly adjudicated the claims. III. Warranty Deed For his second point on appeal, George argues that the circuit court erred in validating the 1999 warranty deed. The relevant facts pertaining to George’s argument are as follows. The 1999 warranty deed states that consideration was “for .,. the sum of Ten Dollars ($10.00) and the job as farm manager for ten (10) years, or until death.” However, George later sought to set aside the 1999 warranty deed by offering evidence of additional consideration that was not contained in the 1999 warranty deed.. After considering the evidence, the circuit court granted partial summary judgment: 3. That the warranty deed executed by George M. Stokes, Sr. and Penelope Stokes (now deceased) on April 12, 1999 and recorded on September 27, 1999, transferring the disputed farm land in Chicot County to Mason Stokes and George M. Stokes, II, as tenants in common, is hereby found to be | .¿unambiguous, and not subject to parol evidence as to its meaning. The circuit court also ruled that “the claims of George M. Stokes, Sr., regarding consideration for, and delivery of, the 1999 warranty deed pursuant to his counterclaim” would be determined in a bench trial. Subsequently, the circuit court denied and dismissed George’s counterclaim and ruled that the warranty deed was a valid deed. Because the circuit court disposed of George’s counterclaim concerning the 1999 warranty deed after trial, our standard of review on appeal is whether the circuit court’s findings were clearly erroneous or clearly against the preponderance of the evidence. Cochran v. Bentley, 369 Ark. 159, 251 S.W.3d 253 (2007); Ark. R. Civ. P. 52(a). We view the evidence in the light most favorable to the appellee, resolving all inferences in favor of the appellee. McQuillan v. Mercedes-Benz Credit Corp., 331 Ark. 242, 961 S.W.2d 729 (1998), Disputed facts and determinations of the credibility of witnesses are within .the province of the fact-finder. Cochran, 369 Ark. 159, 251 S.W.3d 253. The parol-evidence rule prohibits introduction of extrinsic evidence, parol or otherwise, which is offered to vary the terms of a written agreement. First Nat’l Bank v. Griffin, 310 Ark. 164, 832 S.W.2d 816 (1992). It is a substantive rule of law rather than a rule of evidence. Id, Its premise is that the written agreement itself is the best evidence of the intention of the parties. Id. A general proposition of the common law is that in the absence of fraud, accident, or mistake, a written contract merges, and thereby extinguishes, ah prior and contemporaneous negotiations, understandings, and verbal agreements on the same subject. Id. Application of the parol-evidence rule is confined to the parties of the contract |8and does not preclude a stranger from introducing parol evidence for the purpose of varying a written contract. Rainey v. Travis, 312 Ark. 460, 850 S.W.2d 839 (1993). Here, George’s 1999 warranty deed was complete on its face, unambiguous, and conveyed the farmland to Mason. We agree with Mason’s contention' that any additional evidence — George’s power of attorney and alleged authorization to retake title of the farmland, which George claims was a condition precedent to the deed— took place after the 1999 conveyance. Further, George’s recording of the 1999 warranty deed, which he drafted himself, raises a presumption of delivery to Mason. See, e.g., Parker v. Lamb, 263 Ark. 681, 567 S.W.2d 99 (1978). Thus, we conclude that the circuit court did not err on this point. IV. Quitclaim Deed For his third point on appeal, George argues that the circuit court erred in- granting partial summary judgment and, specifically, in ruling that the 2009 quitclaim deed was void. George maintains that the record demonstrated a genuine .issue of material fact on Mason’s power of attorney and on his “right to re-take title to the property.” The law is well settled regarding the standard of review used by this court in reviewing a grant of summary judgment. Quarles v. Courtyard Gardens Health & Rehab., LLC, 2016 Ark. 112, 488 S.W.3d 513. A circuit court will grant summary judgment only when it is apparent that no genuine issues of material fact exist requiring litigation and that the moving party is entitled to judgment as a matter of law. Id. Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. Id. In reviewing a grant of summary | ¡judgment, an appellate court determines if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. Id. We view the evidence in the light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. Id. This court has held that a person holding a power of attorney has a fiduciary duty to the principal. Dent v. Wright, 322 Ark. 256, 909 S.W.2d 302 (1995). In Duke v. Shinpaugh, 375 Ark. 358, 290 S.W.3d 591 (2009), Duke purported to use a power of attorney to execute a deed from Shin-paugh to herself. Upon a petition to set aside the deed, the circuit court set aside the deed and found (1) that the power of attorney signed by Shinpaugh was void because he had been under the undue influence of Duke; and (2) that even if the power of attorney had been valid, Duke had exceeded her authority granted under the terms of the power of attorney in conveying certain property to herself and that she had breached her fiduciary duty not to engage in self-dealing. Because Duke did not challenge both independent grounds for setting aside the deed, we affirmed the circuit court’s ruling. Id. The instant case presents facts similar to those in Duke. Here, the circuit court found the quitclaim deed “void and of no effect” because the power of attorney had been revoked, and ultimately, the circuit court denied George’s counterclaim. Based on the evidence, George failed to provide proof with proof in demonstrating the existence of a material issue of fact. He did not offer evidence that (1) he held a valid power of attorney to execute the quitclaim deed, and (2) even if the power of attorney was valid, he did not breach his | j(fiduciary duty by executing the 2009 quitclaim deed and by transferring the farmland back to himself Thus, we cannot say that the circuit court erred in granting summary judgment and in ruling that the 2009 quitclaim deed was void. V. Attorney’s Fees For his fourth point on appeal, George argues that the circuit court erred in awarding attorney’s fees to Mason pursuant to Arkansas Code Annotated section 16-22-308. This court follows the American rule, which requires every litigant to bear his or her attorney’s fees absent statutory authority or a contractual agreement between the parties. Carter v. Cline, 2013 Ark. 398, 430 S.W.3d 22; Griffin v. First Nat’l Bank of Crossett, 318 Ark. 848, 888 S.W.2d 306 (1994); Damron v. Univ. Estates, Phase II, Inc., 295 Ark. 533, 750 S.W.2d 402 (1988). Enacted in 1987, Arkansas Code Annotated section 16-22-308 permits an award of fees to a prevailing party in certain civil actions: In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney’s fee to be assessed by the court and collected as costs. This court has stated that a warranty deed should be considered a contract between a grantor and a grantee. See Schnitt v. McKellar, 244 Ark. 377, 382, 427 S.W.2d 202, 206 (1968); Black v. Been, 230 Ark. 526, 528, 323 S.W.2d 545, 547 (1959); Davis v. Collins, 219 Ark. 948, 951, 245 S.W.2d 571, 572 (1952); Jackson v. Lady, 140 Ark. 512, 523, 216 S.W. 505, 508 (1919). These cases, however, predate the codification of section 16-22-308 and are not controlling on the issue of the availability of attorney’s fees. | uThe statute permits attorney’s fees in foreclosure actions, see, e.g., Hudson v. Hilo, 88 Ark. App. 317, 198 S.W.3d 569 (2004), and in actions involving oil-and-gas leases, see, e.g., Sunbelt Exploration Co. v. Stephens Prod. Co., 320 Ark. 298, 896 S.W.2d 867 (1995). We also acknowledge that the fees are permitted when a breach-of-contract action seeks equitable remedies such as specific performance. See, e.g., Childs v. Adams, 322 Ark. 424, 909 S.W.2d 641 (1995). But this court has stated that the statute does not authorize fees when the claim merely has some connection to a contract. See, e.g., City of Little Rock v. Hudson, 366 Ark. 415, 236 S.W.3d 509 (2006). George maintains that section 16-22-308 is inapplicable because a breach-of-contract claim was not asserted. We agree with his contention for the following two reasons. First, this court looks to George’s complaint as a whole and concludes that the litigation between the parties does not concern a breach of a contract between George and Mason. Moreover, the case at bar was not based on contract at all; instead, the complaint alleged a quiet-title -action. We look to the pleadings to determine the nature of the claim. See, e.g., L.L. Cole & Son, Inc. v. Hickman, 282 Ark. 6, 665 S.W.2d 278 (1984). Here, George, in his motion to dismiss. Mason’s amended petition to quiet title, uses terms such as “failure of consideration” and “breach of a condition imposed by the warranty deed,” but these terms do not determine the nature of the lawsuit. Mason’s amended petition to quiet title asserted a statutory claim to set aside a quitclaim deed and to quiet title in the farmland. The quiet-title statutes do not authorize attorney’s fees. See Ark. Code Ann. §§ 18-60-501 to -505 (Repl. 2015). In the absence of statutory authority, attorneys fees are not available. See Harper v. Wheatley Implement Co., 278 Ark. 27, 643 S.W.2d 537 (1982); Romer v. Leyner, 224 Ark. 884, 277 S.W.2d 66 (1955). Second, Mason’s prayer for relief included a monetary claim based on unjust enrichment. Quantum .meruit is a claim for unjust enrichment that does not involve the enforcement of contract. Sisson v. Ragland, 294 Ark. 629, 745 S.W.2d 620 (1988). There can be no unjust enrichment in contract cases. Lowell Perkins Agency, Inc. v. Jacobs, 250 Ark. 952, 469 S.W.2d 89 (1971). Unjust enrichment is a quasi-contract claim. See, e.g., Sparks Reg’l Med. Ctr. v. Blatt, 55 Ark. App. 311, 935 S.W.2d 304 (1996). Courts of foreign jurisdictions have allowed the recovery of attorney’s fees by applying the legal fictions of implied contract, and quasi-contract, but this has “never been allowed in Arkansas.” See Med. Liab. Mut. Ins. Co. v. Alan Curtis Enter., Inc., 373 Ark. 525, 527, 285 S.W.3d 233, 235 (2008). Because Mason asserted an unjust-enrichment claim, he is not entitled to attorney’s fees. Therefore, we conclude that in this case attorney’s fees are not authorized by section 16-22-308. Accordingly, we reverse the circuit court’s order granting Mason’s request for fees. Affirmed in part; reversed in part. Danielson and Wood, JJ., concur in part; dissent in part.. Hart, J., dissents. . The circuit court later granted a joint motion to dismiss George II, a minor. For this reason, we will refer only to Mason. . At the circuit court and to this court, George cites Dairy Queen, Inc. v. Wood, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), for the proposition that legal claims should be tried first in order to preserve the party’s constitutional right to a trial by jury. However, Amendment VII to the United States Constitution guaranteeing a jury trial is not binding on state courts. Crawford v. Cashion, 2010 Ark. 124, 361 S.W.3d 268; Colclasure v. Kansas City Life Ins. Co., 290 Ark. 585, 720 S.W.2d 916 (1986). Accordingly, federal decisions on the right to a jury trial have little or no persuasive authority. . When Arkansas had separate courts of law and equity, the clean-up doctrine provided that a court of chancery or equity could obtain jurisdiction over matters not normally .within its purview. Douthitt v. Douthitt, 326 Ark. 372, 930 S.W.2d 371 (1996), The cleanup doctrine provides that, once a court of equity acquires jurisdiction over a case, it may decide all other issues, legal or equitable, Colclasure, 290 Ark. 585, 720 S.W.2d 916 (1986), Since amendment 80 was enacted, the clean-up doctrine has disappeared because any circuit court now has subject-matter jurisdiction to hear all justiciable matters not assigned elsewhere, and it has the power to grant all remedies to the parties before it, See McDaniel, Charles Dr., Jr., First National Bank of Dewitt v. Cruthis: An Analysis of the Right to a Jury Trial in Arkansas after the Merger of Law and Equity, 60 Ark. L.Rev. 563 (2007).